**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)

Michael B. Schaedle (MS 7988)
Josef W. Mintz (JM 9145)
Victoria A. Guilfoyle (VG 6322)
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
Phone: (215) 569-5762
Fax:  (215) 832-5762
Schaedle@blankrome.com
Mintz@blankrome.com
Guilfoyle@blankrome.com

*Counsel to Bonnie Glantz Fatell, Chapter 11*
*Trustee*

In re:

  WOODCREST COUNTRY CLUB,                    Case No. 12-22055 (JHW)

                      Debtor.                 Judge Judith H. Wizmur

                                              Chapter 11

### CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY BONNIE GLANTZ FATELL, AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF WOODCREST COUNTRY CLUB

Bonnie Glantz Fatell, chapter 11 Trustee for Woodcrest Country Club, respectfully submits this Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Woodcrest Country Club in the form annexed hereto and made a part hereof.

## TABLE OF CONTENTS

**ARTICLE I** INTRODUCTION, DEFINITIONS,
INTERPRETATION AND EXHIBITS................................................................1
    1.01    Introduction................................................................1
    1.02    Definitions................................................................1
    1.03    Rules of Interpretation ................................................12
    1.04    Exhibits ................................................................13
**ARTICLE II** CLASSIFICATION OF CLAIMS................................................13
    2.01    General Overview................................................13
    2.02    Unclassified Claims................................................13
    2.03    Unimpaired Claims ................................................13
    2.04    Impaired Classes Entitled to Vote................................13
    2.05    Impaired Classes Deemed to Reject ................................13
**ARTICLE III** PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS................14
    3.01    Satisfaction of Claims................................................14
    3.02    Unclassified Claims, Classified Unimpaired and Impaired Claims................14
    3.03    Administrative Claims ................................................14
    3.04    Bar Date for Administrative Claims ................................14
    3.05    Priority Tax Claims................................................15
    3.06    Class 1: Prepetition Secured Lender Claims................................15
    3.07    Class 2: Priority Claims ................................................16
    3.08    Class 3: General Unsecured Claims................................16
    3.09    Class 4: Preferred Bond Holders Claims ................................16
    3.10    Class 5: Preferred Indenture Holders Claims................................16
**ARTICLE IV** ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN ................17
    4.01    Acceptance by Impaired Classes of Claims................................17
    4.02    Voting Classes ................................................17
    4.03    Ballot Instructions ................................................17
    4.04    Cramdown................................................17
**ARTICLE V** PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN................18
    5.01    Timing of Distributions................................................18
    5.02    Distributions to Holders of Allowed Claims ................................18
    5.03    No Payment or Distribution Pending Allowance................................18
    5.04    Resolution of Disputed Claims ................................19
    5.05    Delivery of Distributions ................................19
    5.06    Method of Cash Distributions ................................19
    5.07    Failure to Negotiate Checks................................19
    5.08    Unclaimed Property ................................20
    5.09    Limitation on Distribution Rights................................20
    5.10    Fractional Dollars................................20
    5.11    Compliance with Tax Requirements................................20
    5.12    De Minimis Distributions ................................21
**ARTICLE VI** EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS ................21
    6.01    Treatment of Executory Contracts and Unexpired Leases ................21

i

6.02    Cure of Defaults for Assumed Contracts and Leases ...........................................21
6.03    Bar Date for Claims for Rejection Damages ......................................................22
6.04    Treatment of Rejection Claims ..........................................................................22
6.05    Benefit Programs .................................................................................................22
**ARTICLE  VII** MEANS FOR IMPLEMENTATION OF THE OF THE PLAN......................22
7.01    The Sale ..............................................................................................................22
7.02    Compromise and Settlement ..............................................................................22
7.03    Retained Estate....................................................................................................23
7.04    Powers and Duties of the Trustee ......................................................................23
7.05    Purchaser Implementation Obligations...............................................................24
7.06    Application of Sale Proceeds ..............................................................................24
7.07    Corporate Action.................................................................................................24
7.08    Compliance with Applicable State Law .............................................................25
7.09    Continued Existence ...........................................................................................25
7.10    Closing of the Debtor's Chapter 11 Case ..........................................................25
**ARTICLE  VIII** TERMINATION AND PRESERVATION OF
CAUSES OF ACTION AND  RIGHT TO DEFEND AND CONTEST ....................................25
8.01    Dismissal of Foreclosure Action, Foreclosure Appeal
and Law Division Action ..............................................................................................25
8.02    Preservation of Rights.........................................................................................26
8.03    Causes of Action .................................................................................................26
8.04    Setoffs .................................................................................................................26
**ARTICLE  IX** CONDITIONS TO CONSUMMATION OF THE PLAN................................26
9.01    Confirmation Order..............................................................................................26
9.02    Conditions to Effective Date...............................................................................27
9.03    Effect of Failure or Absence of Waiver of Conditions
Precedent to the Effective Date of the Plan ..................................................................28
**ARTICLE  X** EFFECTS OF CONFIRMATION .................................................................28
10.01   Injunction Regarding Released Claims................................................................28
10.02   Exculpation .........................................................................................................28
10.03   Releases by the Trustee.......................................................................................29
10.04   Releases by Holders of Claims ...........................................................................29
10.05   Other Documents and Actions ............................................................................30
10.06   Term of Injunctions or Stays...............................................................................30
10.07   Preservation of Insurance....................................................................................30
10.08   Guaranties ...........................................................................................................30
10.09   Subordination Rights ..........................................................................................30
10.10   No Successor Liability ........................................................................................31
**ARTICLE  XI** RETENTION OF JURISDICTION ..............................................................31
11.01   Exclusive Jurisdiction of Bankruptcy Court ......................................................31
11.02   Failure of Bankruptcy Court to Exercise Jurisdiction........................................33
**ARTICLE  XII** MISCELLANEOUS PROVISIONS .............................................................33
12.01   Binding Effect of Plan ........................................................................................33
12.02   Withdrawal of the Plan .......................................................................................33
12.03   Final Order..........................................................................................................34
12.04   Modification of the Plan .....................................................................................34

140630.01600/40205933v.7

| | | |
|---|---|---|
| 12.05 | Business Days | 34 |
| 12.06 | Severability | 34 |
| 12.07 | Governing Law | 34 |
| 12.08 | Payment of Statutory Fees | 35 |
| 12.09 | Post-Confirmation Reports | 35 |
| 12.10 | Notices | 35 |
| 12.11 | Filing of Additional Documents | 35 |
| 12.12 | Section 1125 of the Bankruptcy Code | 36 |
| 12.13 | Section 1146 Exemption | 36 |
| 12.14 | Time | 36 |
| 12.15 | No Attorneys' Fees | 36 |
| 12.16 | No Injunctive Relief | 36 |
| 12.17 | Continued Confidentiality Obligations | 36 |
| 12.18 | No Admissions or Waivers | 37 |
| 12.19 | Entire Agreement | 37 |
| 12.20 | Bar Date for Professionals | 37 |
| 12.21 | Conflicts | 37 |
| **ARTICLE XIII** CONFIRMATION REQUEST | | 37 |

140630.01600/40205933v.7

## ARTICLE I
## INTRODUCTION, DEFINITIONS, INTERPRETATION AND EXHIBITS

### 1.01   Introduction

Woodcrest Country Club (the "Debtor") is the debtor in this chapter 11 bankruptcy case. On May 9, 2012, the Debtor commenced this Chapter 11 Case[1] by filing a voluntary chapter 11 petition under the Bankruptcy Code.  On February 7, 2013 (the "Appointment Date"), the Office of the United States Trustee appointed Bonnie Glantz Fatell, Esquire, as chapter 11 trustee of the Debtor's Estate (the "Trustee").

This document is the chapter 11 plan (the "Plan") proposed by the Trustee.  Sent to you in the same envelope as this document is the Disclosure Statement, which has been approved by the Bankruptcy Court, and which is provided to help you understand the Plan.

Pursuant to the Plan, the Trustee will sell substantially all of the Debtor's assets and will distribute the cash on hand as of the Effective Date.  The conditions to the Effective Date are set forth below in Article IX.  The proposed Effective Date of the Plan is not later than **[June 15, 2013]**.

ALL CREDITORS OF THE DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE TRUSTEE RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

### 1.02   Definitions

For the purposes of the Plan, the following terms (which appear in the Plan in capitalized terms) shall have the meanings set forth below.

**"Administrative Claim"** means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals and the Trustee Commission) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtor's Estate or operating the business of the Debtor, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by or on behalf of the Debtor in the ordinary course of its business, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; (b) any fees or charges assessed

---

[1] Capitalized terms used herein shall have the meanings set forth in Section 1.02 hereof.

against the Debtor's Estate under section 1930 of title 28 of the United States Code; (c) any Allowed administrative claim or superpriority claim granted to the Prepetition Secured Lender pursuant to the Cash Collateral Order; and (d) Claims of the Post-Petition Lender in connection with the Post-Petition Loan.

**"Administrative Claims Bar Date"** means, depending on the context, (i) April 30, 2013, the date set by the Bankruptcy Court by which an Administrative Claim arising prior to the Appointment Date must have been Filed, and (ii) the date set forth in the Confirmation Order by which an Administrative Claim arising after the Appointment Date must be Filed.

**"Administrative/Priority Funding Cap"** means an amount not to exceed $1,632,627. The Administrative/Priority Funding Cap is calculated, without limitation: (i) based on the agreement of Blank Rome, LLP, counsel to the Trustee, to cap its fees and expenses at an amount equal to $500,000; (ii) the assumption that the fees and expenses of Executive Sounding Board Associates, Inc., the Trustee's financial advisor will not exceed $85,000; and (iii) the assumption that the Sale Proceeds will equal $6,250,000, the gross amount of the Stalking Horse Bidder's bid. Notwithstanding the foregoing, if the Sale Proceeds exceed $6,250,000, the Administrative/Priority Funding Cap will increase by an amount equal to the resulting increase in the fee, if Allowed, of SSG Capital Advisors, LLC, the Trustee's investment banker, calculated pursuant to the terms of its retention agreement with the Trustee.

**"Allowed"** means, with reference to any Claim, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may have been amended by the Debtor or Trustee from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date, provided that at the time of the Effective Date the Trustee has not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

**"Allowed Claim"** means a Claim that is Allowed.

**"Appointment Date"** shall have the meaning set forth in Section 1.01 of the Plan.

**"Asset Purchase Agreement"** means that certain Asset Purchase Agreement dated as of March 22, 2013 by and among the Trustee, acting for the Debtor and the Debtor's Estate, as seller, and the Stalking Horse Bidder, as buyer, which provides for the sale of certain or substantially all of the Debtor's assets, or such other asset purchase agreement submitted at or prior to the Auction and subsequently determined by the Trustee pursuant to the Sale and Bid Procedures to be the Superior Bid (as defined in the Sale and Bid Procedures).

2

**"Auction"** means the auction for the sale of the Debtor's assets to be held in accordance with the Sale and Bid Procedures.

**"Avoidance Actions"** means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under chapter 5 of the Bankruptcy Code, including, without limitation, sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

**"Ballot"** means the forms of ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of New Jersey with jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

**"Bankruptcy Rules"** means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceeding therein, as the case may be.

**"Bar Date"** means September 12, 2012, which is the applicable bar date by which a proof of Claim in respect of Priority Claims, Priority Tax Claims, General Unsecured Claims, and subordinated claims of Members or Insiders must have been, Filed, as established by that notice of the Bankruptcy Court dated May 10, 2012 [Dkt. No. 16] (except in respect of General Unsecured Claims for rejection damages, which are otherwise governed by orders, notices and rules in connection with the filing of such proofs of claim).

**"Breakup Fee and Expense Reimbursement"** refer to possible amounts owed the Stalking Horse Bidder under the Asset Purchase Agreement and the Sale and Bid Procedures and shall be defined by reference to the Asset Purchase Agreement and the Sale and Bid Procedures.

**"Business Day"** means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of New Jersey are authorized or obligated by law, executive order or governmental decree to be closed.

3

"**Bylaws**" means the Woodcrest Country Club Constitution and By-Laws dated as of November 1, 2010.

"**Cash**" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"**Cash Collateral Order**" means each interim or Final Order, as in effect from time-to-time, entered by the Bankruptcy Court authorizing and approving the Debtor's use of cash collateral pursuant to section 363 of the Bankruptcy Code, and any extensions or amendments thereof.

"**Causes of Action**" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, rights of turnover or replevin, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor or the Debtor's Estate, including, but not limited to, the Avoidance Actions and Debtor's Counterclaims.

"**Chapter 11 Case**" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date.

"**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the latest of: (a) 60 days after the entry of the Confirmation Order; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) above.

"**Class**" means each class, subclass or category of Claims as classified in Article II of the Plan.

"**Closing**" shall have the meaning set forth in sections 1.1(s-t) and section 11.1 of the Asset Purchase Agreement.

"**Confirmation**" or "**Confirmed**" means the entry by the Bankruptcy Court of the Confirmation Order.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code scheduled to begin on [**May 24, 2013 at 1:00 p.m. (E.T.)**)].

4

**"Confirmation Order"** means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Creditor"** means any Person that is the Holder of any Claim against the Debtor.

**"Debtor"** shall have the meaning set forth in Section 1.01 of this Plan.

**"Debtor's Counterclaims"** means the counterclaims that the Debtor has asserted against Sun National Bank in the Law Division Action and the Foreclosure Action.

**"Disallowed"** means, with respect to any Claim or portion thereof, any Claim against in the Debtor which: (a) has been withdrawn, in whole or in part, by agreement of the Debtor or the Trustee, as applicable, and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction. In each case, a Disallowed Claim is disallowed only to the extent of disallowance or withdrawal.

**"Disallowed Claim"** means a Claim, or any portion thereof, that is Disallowed.

**"Disclosure Statement"** means the Disclosure Statement with Respect to the Trustee's Chapter 11 Plan of Reorganization for the Estate of Woodcrest Country Club, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Trustee, as the same may be altered, amended, supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

**"Disputed"** means any Claim that has been neither Allowed nor Disallowed.

**"Disputed Claim"** means a Claim, or any portion thereof, that is Disputed. For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

**"Effective Date"** means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

**"Entity"** means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

**"Estate"** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

**"Exculpated Persons"** means: (a) the Prepetition Secured Lender; (b) the Trustee; (c) the Purchaser; (d) the Post-Petition Lender; and (e) to the extent that such parties are

5

Exculpated Persons, each and every predecessor, successor, assign, subsidiary, executor, administrator, and their respective current and former officers, directors, employees, board members, agents, bondholders, representatives, stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in clauses (a) through (d) of this definition.

"**File, Filed or Filing**" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

"**Final Decree**" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Rule 3022-1.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court (x) as to which the time to appeal, petition for *certiorari*, or move for reargument, reconsideration, rehearing or new trial has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument, reconsideration, rehearing or new trial shall then be pending; (y) as to which any right to appeal, petition for *certiorari*, reargue, reconsider, rehear or retry shall have been waived in writing; or (z) in the event that an appeal, writ of *certiorari*, reargument, reconsideration, rehearing or new trial has been sought, as to which (i) such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order is appealed, (ii) *certiorari* has been denied as to such order, or (iii) reargument, reconsideration or rehearing or new trial from such order shall have been denied or resulted in no modification or such order, and the time to take any further appeal, petition for *certiorari*, or move for reargument, reconsideration, rehearing, or new trial shall have expired without such actions have been taken; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"**Foreclosure Appeal**" means the appeal of the Foreclosure Action commenced by the Debtor in the Superior Court of New Jersey Appellate Division captioned as Sun National Bank v Woodcrest Country Club, docket number A-002805-11.

"**Foreclosure Action**" means the foreclosure action commenced by Sun National Bank on October 13, 2010 in the Superior Court of New Jersey, Chancery Division, Camden County captioned as Sun National Bank v Woodcrest Country Club, Docket No. F-045718-10.

"**General Unsecured Claims**" means all Claims, including, but not limited to Rejection Claims, that are not Administrative Claims, Priority Tax Claims, Professional Fee Claims, Prepetition Secured Lender Claims, Preferred Bond Holder Claims, or Proprietary Indenture Holder Claims.

"**Holder**" means an Entity holding a beneficial interest in a Claim and, when used in conjunction with a Class or type of Claim, means a holder of a beneficial interest in a Claim in such Class or of such type.

6

"**Impaired**" means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Claim**" means a Claim which is Impaired.

"**Insider**" shall have the meaning set forth in section 101(31) of the Bankruptcy Code and shall also encompass any Person with a sufficiently close relationship with the Debtor that his or her conduct is made subject to closer scrutiny than a Person dealing at arm's length with the Debtor.

"**Law Division Action**" means the civil action commenced by Sun National Bank on September 24, 2010 in the Superior Court of New Jersey, Law Division, Cumberland County captioned as <u>Sun National Bank v Woodcrest Country Club</u>, Docket No. CUM-L-000964-10.

"**Liens**" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"**Local Rules**" means the Local Rules of the Bankruptcy Court District of New Jersey.

"**Member**" shall mean a member of the Debtor.

"**Objection**" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) other than a Claim that is Allowed.

"**Person**" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; <u>provided</u>, <u>however</u>, "Person" does not include governmental units, except that a governmental unit that acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person.

"**Petition Date**" means May 9, 2012, the date on which the Debtor filed its petition for relief commencing this Chapter 11 Case.

7

**"Plan"** means the Chapter 11 Plan of Reorganization for the Estate of Woodcrest Country Club dated as of April 18, 2013, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Trustee, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order and the terms and conditions of the Plan.

**"Plan Fund"** means the amount of Cash to be carved out from the Sale Proceeds necessary to: (i) fund the Unsecured Creditor Fund, (ii) pay Allowed Administrative Claims (which includes, without limitation, the Allowed Trustee Commission and the U.S. Trustee's Fee Claims), Professional Fee Claims, Priority Tax Claims, and Priority Claims not to exceed the Administrative/Priority Funding Cap, (iii) pay off the outstanding balance of the Post-Petition Loan as of the Effective Date, and (iv) in the event that the Purchaser is not the Stalking Horse Bidder, Cash necessary to pay the Breakup Fee and Expense Reimbursement.  Notwithstanding the foregoing, in the event that the Purchaser is Sun National Bank or its designee by credit bid, the Plan Fund shall be funded by Sun National Bank.

**"Post-Petition Loan"** means the post-petition loan provided to the Trustee by the Post-Petition Lender pursuant to the Post-Petition Financing Order and related documents.

**"Post-Petition Financing Order"** means the interim or Final Order, as in effect from time-to-time, entered by the Bankruptcy Court authorizing the Trustee to receive the Post-Petition Loan pursuant to section 364 of the Bankruptcy Code, and any extensions or amendments thereof.

**"Post-Petition Lender"** means Sun National Bank, in its capacity as post-petition lender to the Trustee, on behalf of the Debtor's Estate.

**"Preferred Bond Holders"** means the holders of Preferred Bonds.

**"Preferred Bonds"** means the Preferred Bonds that were issued by the Debtor prior to the Petition Date.

**"Preferred Bond Holder Claims"** means the claims of the Preferred Bond Holders arising under the Preferred Bonds.

 **"Prepetition Secured Financing Agreements"** means (i) that certain Building Loan Agreement, dated on or about September 5, 2002, together with all guaranties, security agreements, subordination agreements, intercreditor agreements, blocked account or deposit control agreements, indentures, notes, mortgages, pledges, instruments and any other documents or agreements executed in connection therewith and/or in furtherance thereof, as same may have been amended, restated, supplemented or otherwise modified from time to time, and (ii) that certain Secured Revolving Credit Loan Agreement, dated on or about August 23, 2007, together with all security agreements, blocked account or deposit control agreements, notes, mortgages, pledges, instruments and any other documents or agreements executed in connection therewith and/or in furtherance thereof, as same may have been amended, restated, supplemented or

8

otherwise modified from time to time, pursuant to which the Prepetition Secured Lender agreed to provide loans and other financial accommodations to the Debtor.

**"Prepetition Secured Lender"** means Sun National Bank in its capacity as lender pursuant to the Prepetition Secured Financing Agreements.

**"Prepetition Secured Lender Claim"** means the claim of the Prepetition Secured Lender arising under the Prepetition Secured Financing Agreements in an amount of $11,635,872.14 as of the Petition Date plus accrued interest thereafter, but only to the extent that such Claim is a fully secured claim as determined by section 506(a)(1) of the Bankruptcy Code.

**"Priority Claim"** means any Claim accorded priority in payment pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**"Priority Tax Claim"** means any Claim accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**"Pro Rata Share"** means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until disallowed).

**"Professional Fee Claims"** means Administrative Claims for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with applications by Professionals in the Chapter 11 Case and approved by Order of the Bankruptcy Court.

**"Professionals"** means any professional employed in this Chapter 11 Case pursuant to sections 327, and 1106 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4) of the Bankruptcy Code.

**"Property"** means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including, without limitation, Cash, contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

**"Purchaser"** means the Stalking Horse Bidder under the Asset Purchase Agreement or a Superior Bidder (as that term is defined in the Sale and Bid Procedures and the Asset Purchase Agreement), including, without limitation, Sun National Bank, subject to its obligations to provide the Plan Fund pursuant to this Plan and the Plan Funding Agreement.

**"Proprietary Indenture Holder"** means the holder of a Proprietary Indenture.

**"Proprietary Indenture"** means any Proprietary Indenture Bond issued by the Debtor prior to the Petition Date.

9

**"Proprietary Indenture Holder Claims"** means any claim of a Proprietary Indenture Holder arising under a Proprietary Indenture.

**"Rejection Claims"** means claims of any non-Debtor counterparty to any unexpired lease of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of this Chapter 11 Case under section 365 of the Bankruptcy Code or pursuant to the Plan or the Asset Purchase Agreement.

**"Releasees"** means: (a) the Prepetition Secured Lender, (b) the Trustee, (c) the Purchaser, (d) the Post-Petition Lender; (e) the Releasees' predecessors, successors, assigns, subsidiaries, executors, and the Releaseee' respective current and former officers, directors, employees, board members, agents, bondholders, representatives, stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in subclauses (a) through (d) above,  provided, however, that the foregoing released parties identified in subclauses (a) through (d) above shall be released only from liabilities arising out of actions taken in such capacity.

**"Retained Estate"** means all of the Property of the Debtor, including without limitation, all remaining Property of the Debtor's Estate after Closing (including, without limitation, any Debtor interest in escrows, deposits and insurances), the Plan Fund, the Causes of Action (subject to the release provisions of this Plan, including, without limitation, as to the Debtor's Counterclaims) and the Cash and non-Cash proceeds thereof, which shall not revest in the Debtor upon Confirmation, but shall be retained in the Debtor's Estate, which Retained Estate shall continue until the Retained Estate's Property has been entirely distributed or otherwise disposed of under the Plan and the Confirmation Order by the Trustee.

**"Sale"** means the sale of substantially all of the Debtor's assets under or in connection with the Plan and the Asset Purchase Agreement.

**"Sale and Bid Procedures"** means the sale, bid and auction procedures set forth in the Sale Procedures Motion and approved by the Bankruptcy Court pursuant to the certain *Order: (A) Approving Procedures for the Sale of Substantially All of the Debtor's Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief* entered April 2, 2013 [Dkt. No. 294].

**"Sale Documents"** means the Asset Purchase Agreement, the Schedule of Assumed Contracts, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms.

**"Sale Procedures Motion"** means the *Motion of Bonnie Glantz Fatell, Chapter 11 Trustee, for an Order:  (A) Approving Procedures for the Sale of Substantially All of the Debtor's Assets;  (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief* Filed on March 22, 2013 in the Bankruptcy Court seeking approval of, among other things, sale and auction procedures in connection with the Sale.

10

**"Sale Proceeds"** means the Sale proceeds to be paid by the Purchaser to the Trustee for the benefit of the Debtor's Estate pursuant to the Asset Purchase Agreement including post-Closing adjustments.

**"Schedule of Assumed Contracts"** means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Purchaser under or in connection with the Asset Purchase Agreement, which schedule shall be set forth in or as an attachment or exhibit to the Asset Purchase Agreement.

**"Schedules"** means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor in the Chapter 11 Case, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**"Secured Claim"** means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor's Estate has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

**"Stalking Horse Bidder"** means Cherry Hill Land Associates Limited Liability Company, a New Jersey limited liability company.

**"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

**"Trustee"** shall have the meaning set forth in Section 1.01 of the Plan.

**"Trustee Commission"** shall be the commission due the Trustee as allowed by law and authorized by the Bankruptcy Court in the maximum amount of $125,000 as agreed by the Prepetition Secured Lender and the Trustee.

**"Trustee Releasors"** shall mean the Trustee, as a representative of and on behalf of the Debtor, the Debtor's Estate and the Retained Estate, and its predecessors, successors, assigns, subsidiaries, affiliates, past and present officers, directors, agents, executors, administrators, members, bondholders, employees, representatives, advisors and/or attorneys claiming by, through or under any of them.

**"Unclaimed Property"** means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, or, in the case of a distribution made in the form

of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.07 of the Plan.

**"Unimpaired"** means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**"United States Trustee"** means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the District of New Jersey.

**"Unsecured Creditor Fund"** means Cash in the amount of $100,000 to be funded as part of the Plan Fund and distributed Pro Rata to Holders of Allowed Unsecured Claims in accordance with Article V of the Plan.

**"U.S. Trustee's Fee Claims"** means any fees assessed against the Debtor's Estate or the Retained Estate pursuant to section 1930(a)(6) of title 28 of the United States Code.

**"Voting Agent"** means the Trustee or such other Entity that is designated by the Trustee.

**"Voting Deadline"** means [**May 17, 2013**] at 5:00 p.m. Eastern Standard Time, the last date by which Creditors may vote to accept or reject the Plan, unless such deadline is extended by the Trustee or the Bankruptcy Court.

## 1.03   Rules of Interpretation

All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code). Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.14 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

140630.01600/40205933v.7

**1.04** **Exhibits**

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

**2.01** **General Overview**

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent the Claim qualifies within the description of that different Class. A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

**2.02** **Unclassified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims and Claims of the Post-Petition Lender in connection with the Post-Petition Loan) and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan. The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

**2.03** **Unimpaired Claims**

Class 2, which may contain Priority Claims, is unimpaired under the Plan.

**2.04** **Impaired Classes Entitled to Vote**

The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 1 shall consist of the Prepetition Secured Lender Claims.

Class 3 shall consist of the General Unsecured Claims.

**2.05** **Impaired Classes Deemed to Reject**

The Plan classifies the following Impaired Classes of Claims as an Impaired Class that is not entitled to vote to accept or reject the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of a Claim in these Classes is conclusively presumed to have rejected the Plan in respect of such Claims because the Plan does not entitle the Holders of such Claims to receive or retain any Property under the Plan on account of such Claims. Accordingly, Holders of such Claims are not entitled to vote to accept or reject the Plan:

13

Class 4 shall consist of the Preferred Bond Holders Claims.

Class 5 shall consist of the Proprietary Indenture Holders Claims.

## ARTICLE  III
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS

### 3.01    Satisfaction of Claims

The treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against the Debtor and the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.

### 3.02    Unclassified Claims, Classified Unimpaired and Impaired Claims

Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code. Class 2 Claims are not impaired and the Holders thereof are not entitled to vote to accept or reject the Plan on account of such Allowed Claims. Class 1 Claims and Class 3 Claims are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims. Class 4 Claims and Class 5 Claims are Impaired under the Plan and the Holders thereof will neither receive nor retain any Property on account of such Claims and, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Claims are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Claims.

### 3.03    Administrative Claims

Administrative Claims are Unimpaired. Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim shall receive from the Plan Fund in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of -- (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to in writing by the Trustee and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Trustee or as the Bankruptcy Court may order.

### 3.04    Bar Date for Administrative Claims

The Administrative Claims Bar Date of April 30, 2013 applies to all Administrative Claims allowable under sections 330, 503(b), including, without limitation, 503(b)(9) for goods sold to the Debtor within twenty days of the petition date, 507(a)(2) or 1114(e) of the Bankruptcy Code that were due and owing on, or prior to, or as of the Appointment Date. The Administrative Claims Bar Date does not apply to (i) US Trustee Fee Claims; (ii) Administrative

14

Claims that have already been fixed and approved by order of the Bankruptcy Court; (iii) Administrative Claims that have been paid in full at any time prior to the Administrative Claims Bar Date; and (iv) Administrative Claims of professionals of the Trustee arising under Bankruptcy Code sections 327, 328, 330, 331, or 503(b)(2).  The Confirmation Order will establish an Administrative Claims Bar Date for Filing Administrative Claims, except for Claims of the kind specified in Section 12.20 hereof, arising after the Appointment Date, which date will be thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Holders of Administrative Claims that are subject to the Administrative Claims Bar Date shall submit requests for payment on or before such Administrative Claims Bar Date or forever be barred from submitting any request on account of such Administrative Claim.

### 3.05   Priority Tax Claims

Priority Tax Claims are Unimpaired.  Each Holder of an Allowed Priority Tax Claim shall receive from the Plan Fund, at the option of the Trustee, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed and (iii) a date agreed to by the Trustee and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Trustee or as the Bankruptcy Court may order.

### 3.06   Class 1: Prepetition Secured Lender Claims

The Class 1 Prepetition Secured Lender Claim is Impaired.  The Prepetition Secured Lender holds valid, perfected enforceable liens on all of the assets of the Debtor's Estate, up to the amount of the Prepetition Secured Lender Claim.  If the Prepetition Secured Lender complies with the Sale and Bid Procedures, it shall have the right to credit bid the amount of the Prepetition Secured Lender Claim at the Auction.  On the Effective Date, the Prepetition Secured Lender shall be deemed to hold an Allowed Prepetition Secured Lender Claim.  On the Effective Date, the Trustee shall distribute to the Holder of the Allowed Prepetition Secured Lender Claim, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, Sale Proceeds in an amount up to the Allowed Prepetition Secured Lender Claim after carving out from the Sale Proceeds the Cash necessary to create the Plan Fund.  In the event the Purchaser is the Prepetition Secured Lender or its designee, the Purchaser's credit bid in connection with the Sale will be deemed to fully satisfy, settle, release, extinguish and discharge the Allowed Prepetition Secured Lender Claim, subject to the Prepetition Secured Lender's obligation hereunder to pay Cash to the Debtor's Estate to establish the Plan Fund.  In consideration for the foregoing and the Prepetition Secured Lender's agreement in its capacities as both Prepetition Secured Lender and Post-Petition Lender to carveout from Collateral or to establish in Cash the Plan Fund pursuant to the Plan, as soon as practicable after the occurrence of the Effective Date, the Trustee, having released the Debtor's Counterclaims and the Foreclosure Appeal against the Prepetition Secured Lender as of the Effective Date, shall, jointly, with the Prepetition Secured Lender, dismiss the Debtor's Counterclaims, the Foreclosure Appeal, and the Law Division Action with prejudice.

140630.01600/40205933v.7

**3.07**   **Class 2: Priority Claims**

Class 2 Priority Claims, if any, are Unimpaired.  Each Holder of an Allowed Priority Claim, if any, shall receive from the Plan Fund, at the option of the Trustee, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Claim: (a) the amount of such Allowed Priority Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Claim becomes Allowed, and/or (iii) a date agreed to by the Trustee and the Holder of such Priority Claim; or (b) such other treatment on such terms and conditions, as may be agreed upon in writing by the Trustee and such Holder, or as the Bankruptcy Court may order.

**3.08**   **Class 3: General Unsecured Claims**

Class 3 General Unsecured Claims are Impaired.  Each Holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim, its Pro Rata share of (i) the Unsecured Creditor Fund, (ii) in the event the Sale Proceeds exceed the amount of the Allowed Prepetition Secured Lender Claim, any excess proceeds as a result of the Sale and any amounts paid to the Debtor's Estate in connection with any possible sales of miscellaneous Property not sold pursuant to the Asset Purchase Agreement, and (iii) to the extent the Trustee, in her sole discretion, and subject to the express release provisions of this Plan, decides to prosecute Causes of Action that are not expressly released hereby, net of any Administrative Claim asserted against the Retained Estate, any amounts recovered in any such Causes of Action.  The Prepetition Secured Lender waives its right to participate in the Unsecured Creditor Fund, however, for the avoidance of doubt, the Prepetition Secured Lender: (i) does not waive any such unsecured deficiency Claim it may have as a result of the application of section 506 of the Bankruptcy Code; and (ii) reserves its right to participated in any distributions to Class 3 General Unsecured Claims after the Trustee's distribution of the Unsecured Creditor Fund.

**3.09**   **Class 4: Preferred Bond Holders Claims**

Class 4 Preferred Bond Holder Claims are Impaired.  Holders of Class 4 Preferred Bond Holder Claims shall not receive or retain any Property under the Plan on account of such Preferred Bond Holder Claims.  On the Effective Date, all Preferred Bond Holder Claims shall be extinguished.

**3.10**   **Class 5:  Preferred Indenture Holders Claims**

Class 5 Preferred Indenture Holder Claims are Impaired.  Holders of Class 5 Preferred Indenture Holder Claims shall not receive or retain any Property under the Plan on account of such Preferred Indenture Holder Claims.  On the Effective Date, all Preferred Indenture Holder Claims shall be extinguished.

140630.01600/40205933v.7

## ARTICLE  IV
## ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN

### 4.01    Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.

### 4.02    Voting Classes

Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Classes 1 and 3 shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan.  Class 4 Claims (Preferred Bond Holders Claims), and Class 5 Claims (Proprietary Indenture Holders Claims), which are Impaired under the Plain and whose Holders neither receive nor retain any Property on account of such Claims under the Plan, shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have rejected the Plan.  Administrative Claims, Priority Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 4.03    Ballot Instructions

Each Holder of a Claim entitled to vote on the Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received.  Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

### 4.04    Cramdown

If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Trustee may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

17

140630.01600/40205933v.7

## ARTICLE  V
## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

**5.01**   **Timing of Distributions**

Except as specifically set forth in the Plan, distributions of Property will be made to Holders of Allowed Claims in accordance with Article III of the Plan.  If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article III of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, Section 6.02 of the Plan, and in each case, subject to Article VIII of the Plan.  Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter.

**5.02**   **Distributions to Holders of Allowed Claims**

Except as otherwise provided herein, the Trustee shall make all distributions required under the Plan in a manner consistent with the Plan.  Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan.  On or as soon as reasonably practicable after the Effective Date, after deducting from the Sale Proceeds the Cash necessary to create the Plan Fund, the Trustee shall: (i) pay in full the Claims of the Post-Petition Lender with respect to the Post-Petition Loan, unless the Purchaser is Sun National Bank or its designee by credit bid; (ii) pay the remaining Sale Proceeds to the Holder of the Allowed Prepetition Secured Lender Claim, unless the Purchaser is Sun National Bank or its designee by credit bid; and (iii) in accordance with the Plan, distribute to Holders of Allowed Claims Cash from the Plan Fund and Property of the Debtor's Estate not conveyed to the Purchaser and the proceeds of such Property.

Pending distribution, the Plan Fund and any other Property to be distributed by the Trustee shall be held in an interest bearing account, with any such interest inuring to the benefit of Holders of Allowed Claims.  Payments and other distributions to be made pursuant to the Plan will be made by the Trustee and such distributions will be available from the Plan Fund and funds transferred to or otherwise held by the Trustee as of and after the Effective Date.  If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Trustee shall delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

**5.03**   **No Payment or Distribution Pending Allowance**

All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtor, the Trustee and the Holder of such Claim, by operation of law, by Final Order, or by this Plan.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

18

**5.04    Resolution of Disputed Claims**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Trustee shall have the right, on and after the Effective Date, to File objections to Claims (except those specifically Allowed by this Plan) and shall serve a copy of each such objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline.   The Claims Objection Deadline may be extended by order of the Bankruptcy Court.   An objection to any Claim shall be deemed properly served on the Holder thereof if the Trustee effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Case.

**5.05    Delivery of Distributions**

Distributions to Holders of Allowed Claims shall be made by the Trustee: (a) at the last known addresses of such Holders or (b) at the addresses set forth in any written notices of address changes delivered to the Trustee.   If any Holder's distribution is returned as undeliverable, the Trustee shall treat such distribution as Unclaimed Property pursuant to Section 5.08 of the Plan unless and until the Trustee is notified of such Holder's then current address, at which time such distribution shall be made to such Holder without interest and such Holders of Allowed Claims in respect of distributions that become Unclaimed Property but do not deliver written notices of address changes to the Trustee on or before the entry of the Final Decree shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor, the Estate, the Trustee or the Disbursing Agent.

**5.06    Method of Cash Distributions**

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Trustee.

**5.07    Failure to Negotiate Checks**

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.   Any amounts returned to the Trustee in respect of such non-negotiated checks shall be held by the Trustee.   Requests for reissuance for any such check shall be made directly to the Trustee by the Holder of the Allowed Claim with respect to which such check originally was issued.   All amounts represented by any voided check will be held until, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to, the earlier of: (a) one (1) month after the date on which the check is voided; or (b) the date on which the Bankruptcy Court enters the Final Decree.   Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.08 of the Plan, and such Holders of Claims in respect of void checks

19

that become Unclaimed Property shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor, the Estate, the Disbursing Agent or the Trustee.

## 5.08   Unclaimed Property

All Unclaimed Property must be claimed, or in the case of a distribution made in the form of a check, must be negotiated, prior to the date on which the Bankruptcy Court enters the Final Decree. All Unclaimed Property will be retained by Trustee and either (a) distributed in accordance with the priorities set forth in the Plan; or (b) if the Trustee concludes that the costs of making a further distribution exceeds the likely benefit to the Holders of Allowed Claims, such Unclaimed Property shall be deposited with the registry of the Bankruptcy Court pursuant to Local Rule 3011-1. All full or partial payments made by the Debtor or the Trustee and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtor's Estate pursuant to the Plan. Nothing contained in the Plan shall require the Trustee to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtor and any Claims filed in the Chapter 11 Case. Pursuant to section 1143 of the Bankruptcy Code, all claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.08 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor, the Debtor's Estate, the Disbursing Agent or the Trustee.

## 5.09   Limitation on Distribution Rights

If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

## 5.10   Fractional Dollars

Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 5.08 of this Plan.

## 5.11   Compliance with Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Trustee within

20

thirty (30) days from the date of such request, the Trustee may, withhold the amount required and distribute the balance to such Person or decline to make such distribution, treating such distribution as Unclaimed Property pursuant to Section 5.08 of the Plan unless and until the information is received.

**5.12  De Minimis Distributions**

No Cash payment of less than twenty ($20.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.  For the avoidance of doubt, distributions to Holders of Allowed Administrative Claims shall be in the full amount of the allowed claim, not subject to this limitation.

**ARTICLE  VI**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES;**
**INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS**

**6.01  Treatment of Executory Contracts and Unexpired Leases**

All executory contracts and unexpired leases of the Debtor shall be deemed rejected by the Trustee as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date, or (c) is listed on the Schedule of Assumed Contracts, provided, however, that the Trustee and the Purchaser shall have the right, at any time prior to the Confirmation Date, to amend the Schedule of Assumed Contracts in any manner set forth in the Asset Purchase Agreement, the Sale Procedures Motion, or by any other means approved by the Bankruptcy Court or to delete any executory contract or unexpired lease listed therein, thus providing for its rejection pursuant to this Section 6.01 or to add any executory contract or unexpired lease thereto, thus providing for its assumption and assignment pursuant to this Section 6.01 and the terms of the Asset Purchase Agreement.  The assumption, assumption and assignment, and rejection of executory contracts and unexpired leases under this Plan shall be governed by the terms of the Asset Purchase Agreement, the Sale Documents, the Sale and Bid Procedures, and other orders of the Bankruptcy Court.

**6.02  Cure of Defaults for Assumed Contracts and Leases**

The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Asset Purchase Agreement, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by the terms and conditions of the Sale and Bid Procedures, the Asset Purchase Agreement, the Sale Documents, any order approving the Asset Purchase Agreement or authorizing the Sale, and other orders of the Bankruptcy Court.  All such cure amounts shall be satisfied by the Purchaser.

21

**6.03** **Bar Date for Claims for Rejection Damages**

Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article VI of the Plan must be filed with the Bankruptcy Court no later than the later of (a) twenty (20) days after the Effective Date, or (b) thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease.   Any Claim not filed within such time period shall be forever barred.  The Trustee shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the terms of Section 5.04 of this Plan.

**6.04** **Treatment of Rejection Claims**

The Bankruptcy Court shall determine any objections Filed in accordance with Section 5.04 hereof at a hearing to be held on a date to be determined by the Bankruptcy Court.  Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 2 Claims in accordance with Article III of the Plan.

**6.05** **Benefit Programs**

Except and to the extent previously rejected by an order of the Bankruptcy Court on or before the Effective Date, all officer, director or employee compensation and benefit programs of the Debtor entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Section 6.01 of the Plan.  By including this provision, the Trustee does not imply that any such Benefit Programs exist or existed.

## ARTICLE  VII
## MEANS FOR IMPLEMENTATION OF THE OF THE PLAN

**7.01** **The Sale**

The Confirmation Order shall authorize a sale of certain or substantially all of the Debtor's assets and the assumption and assignment of certain executory contracts and unexpired leases in connection therewith under sections 365, 1123(b)(4), 1129(b)(2)(A), 1145 and 1146(a) of the Bankruptcy Code and applicable non-bankruptcy law under the terms and conditions of the Asset Purchase Agreement.   Any Sale conducted via Auction shall be conducted in accordance with applicable orders of the Bankruptcy Court, including, without limitation, interim or other orders approving the Sale Procedures Motion (prior to entry of the Confirmation Order).  Upon Confirmation, the Trustee shall be authorized to take any and all actions necessary to consummate the Sale.

**7.02** **Compromise and Settlement**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases and other benefits provided hereunder

22

on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim may have with respect to any Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim. The Plan also constitutes a good faith compromise and settlement between the Debtor, the Debtor's Estate and the Trustee, on one hand, and Sun National Bank on the other hand, of any and all claims between and among the Debtor, the Debtor's Estate, the Trustee and Sun National Bank as set forth more fully in section 10.03 hereof, including, but not limited to the Law Division Action, the Debtor's Counterclaims and the Foreclosure Appeal. Each of the Trustee, acting on behalf of the Debtor and the Debtor's Estate, and Sun National Bank have agreed to the form of this Plan and its substance as it relates to Sun National Bank, the Law Division Action, the Debtor's Counterclaims, the Foreclosure Appeal, Plan funding, and the Administrative/Priority Funding Cap. The settlements contained in this Plan are attributable to the requirements of applicable bankruptcy law and the Bankruptcy Court's ruling at the hearings concerning the appointment of the Trustee. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements (i) are in the best interests of (x) the Debtor and its Estate and Property, and (y) Claim Holders, and (ii) are fair, equitable and reasonable.

**7.03    Retained Estate**

The Property of the Debtor's Estate shall not be revested in the Debtor on or after Confirmation or the Effective Date, but shall remain Property of the Retained Estate and continue to be subject to the jurisdiction of the Bankruptcy Court following Confirmation and the Trustee's administration of the Retained Estate until the Retained Estate and remaining Property is distributed by the Trustee to holders of Allowed Claims or otherwise disposed of by the Trustee in accordance with the terms of the Plan and Confirmation Order on or after the Effective Date. The automatic stay under Bankruptcy Code section 362 shall continue in full force and effect as to the Retained Estate until the entry of the Final Decree by the Bankruptcy Court.

**7.04    Powers and Duties of the Trustee**

The Trustee shall administer the Plan Fund, the Unsecured Creditors Fund and the Retained Estate generally in accordance with this Plan and shall be responsible for, among other things, making distributions required under this Plan. From and after the Effective Date and continuing through the date of entry of a Final Decree, the Trustee shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Case and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court; (b) have the authority to act on behalf of the Debtor in all adversary proceedings and contested matters pending or to be filed by the Trustee in the Bankruptcy Court and in all actions and proceedings pending or to be filed by the Trustee elsewhere; and (c) have the authority to retain such personnel or professionals

23

(including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate. The Trustee shall also have the specific authority to wind-down and dissolve the Debtor (but is not directed or required to do so) once the Retained Estate has been fully distributed and/or otherwise disposed of by the Trustee pursuant to the Plan.

### 7.05   Purchaser Implementation Obligations

In accordance with the terms of the Plan, the Purchaser shall, among other things: (a) remit the Sale Proceeds to the Trustee; (b) satisfy all costs to cure and provide adequate assurance of performance with respect to all executory contracts and unexpired leases assumed and assigned to Purchaser; and (c) if a Superior Bidder (as that term is defined in the Asset Purchase Agreement) is the not the Stalking Horse Bidder, pay to the Trustee the Breakup Fee and Expense Reimbursement.

### 7.06   Application of Sale Proceeds

The Purchaser shall remit the Sale Proceeds to the Trustee at Closing and, upon receipt, the liens of the Prepetition Secured Lender and the Post-Petition Lender shall immediately attach to all Sale Proceeds, provided, however, that the Trustee shall be permitted to establish the Plan Fund by carving out from the collateral of the Prepetition Secured Lender and the Post-Petition Lender the amount of Cash necessary to establish the Plan Fund, and such Plan Fund shall be free and clear of the liens, claims and security interests of the Prepetition Secured Lender. The Trustee shall have no other right to charge or surcharge the Collateral of the Prepetition Secured Lender, including, without limitation, under section 506(c) of the Bankruptcy Code. Notwithstanding the foregoing, in the event that the Purchaser is Sun National Bank or its designee by credit bid, the Plan Fund shall be funded by Sun National Bank. The balance of the Sale Proceeds up to the Amount of the Allowed Prepetition Secured Claim shall be remitted to the Prepetition Secured Lender free and clear of liens, claims and encumbrances in full satisfaction of the Allowed Prepetition Secured Lender Claim. Any amounts in excess of the Allowed Prepetition Secured Lender Claim shall be distributed by the Trustee in accordance with Article III of this Plan.

### 7.07   Corporate Action

The entry of the Confirmation Order shall constitute authorization for the Trustee to take or to cause to be taken all non-profit corporate actions necessary or appropriate to consummate and implement the provisions of the Plan, including, without limitation, the dissolution of the Debtor, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation, the execution and delivery of the Asset Purchase Agreement. Subject to the terms and conditions of the Asset Purchase Agreement, all such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law or the Bankruptcy Code, without any requirement of further action by the board of governors or Members of the Debtor. On the Effective Date, the Trustee is authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Sale Documents in the name and on behalf of the Debtor.

**7.08    Compliance with Applicable State Law**

The Plan complies with New Jersey law.  Specifically, N.J.S.A. 15A:14-23 defines a "reorganization plan" as "a plan of corporate reorganization which has been ordered or confirmed by a court or by a commission or other agency of the United States, in a proceeding brought under any act of Congress providing for the reorganization of corporations." Reorganization includes both rehabilitation and liquidation.  Accordingly, the Plan constitutes "a plan of corporate reorganization" under N.J.S.A. 15A:14-23.  In addition, N.J.S.A. 15A:14-24 provides that the Trustee shall have the power to do any act required or permitted by a plan of reorganization in order to put the plan in effect according to its terms.  *See* N.J.S.A. 15:14-24a and b.  The exercise of such power "shall have the same effect as if done with the unanimous consent of the trustees and the members."  N.J.S.A. 15A:14-24c.

**7.09    Continued Existence**

From and after the Effective Date, the Debtor's Estate shall continue in existence for the purposes of (i) winding up the Debtor's affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash, or other methods, all remaining Property, as expeditiously as reasonably possible, (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, the prosecution of Avoidance Actions and other Causes of Action, (iv) resolving Disputed Claims, (v) administering this Plan and (vi) filing appropriate tax returns.   All of the foregoing actions shall be taken by the Trustee.

**7.10    Closing of the Debtor's Chapter 11 Case**

When all Disputed Claims filed against the Debtor have become Allowed Claims or have been disallowed, and all Property has been liquidated and converted into Cash (other than Property that is abandoned), and such Cash has been distributed in accordance with this Plan, or at such earlier time as the Trustee deems appropriate, the Trustee may seek authority from the Bankruptcy Court to close the Chapter 11 Cases, dissolve the Debtor, and discharge herself from all further duties in connection with the Debtor or the Retained Estate, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable state law.

## ARTICLE  VIII
## TERMINATION AND PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST

**8.01    Dismissal of Foreclosure Action, Foreclosure Appeal and Law Division Action**

The distribution on account of the Allowed Prepetition Secured Lender Claim shall fully settle and dispose of all Debtor's Counterclaims in the Law Division Action, the Foreclosure Action and the Foreclosure Appeal, which settlement shall be effective on the Effective Date. As soon as practicable after the occurrence of the Effective Date of the Plan, the Trustee and Sun National Bank shall jointly cause the dismissal, with prejudice, of the Foreclosure Appeal and the Law Division Action.

25

**8.02    Preservation of Rights**

Except to the extent that any Claim is Allowed during the Chapter 11 Case or expressly by this Plan, the Asset Purchase Agreement, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtor or the Trustee to object to a Claim for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor, the Trustee or the Purchaser with respect to any Claim, including, but not limited to, all rights of the Debtor, Trustee or the Purchaser to contest or defend themselves against such Claims in any lawful manner or forum when and if such Claim is sought to be enforced by the Holder thereof.

**8.03    Causes of Action**

Except as otherwise provided in the Plan, the Asset Purchase Agreement or the Confirmation Order, all Causes of Action, including Avoidance Actions, shall remain the Property of the Debtor's Estate and be part of the Retained Estate. The Trustee shall determine, in her sole discretion, whether to prosecute the Causes of Actions. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Trustee (as a representative of the Debtor's Estate) will have the right to enforce and prosecute such Causes of Action against any Entity, that arose before the Effective Date, other than those expressly conveyed, released or compromised as part of or pursuant to the Plan or the Asset Purchase Agreement.

**8.04    Setoffs**

Except to the extent that any Claim is Allowed, the Trustee may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estate, the Debtor, the Trustee or the Purchaser may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor, the Trustee or the Purchaser of any such claims or Causes of Action the Debtor, the Trustee or the Purchaser may have against such Creditors, and all such claims and Causes of Action which are not expressly released, conveyed or compromised pursuant to the Plan or the Asset Purchase Agreement shall be remain Property of the Estate.

## ARTICLE IX
## CONDITIONS TO CONSUMMATION OF THE PLAN

**9.01    Confirmation Order**

The Confirmation Order shall not be entered unless and until all conditions to entry of the Confirmation Order set forth in the Asset Purchase Agreement have been met and the Disclosure Statement has been approved by Order of the Bankruptcy Court.

26

**9.02    Conditions to Effective Date**

The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred or have been duly waived (if waivable) pursuant to Section 9.03 below:

**(A)**    the Confirmation Order, in form and substance satisfactory to the Trustee and Sun National Bank, shall have been entered by the Bankruptcy Court, shall become a Final Order, shall be in full force and effect and shall not be subject to any stay or injunction by order of a court of competent jurisdiction;

**(B)**    the final version of the Plan and all of the documents and exhibits contained and referenced herein shall be filed and in a form and substance satisfactory to the Trustee and Sun National Bank;

**(C)**    all conditions precedent to the obligations of the Trustee and Purchaser under the Asset Purchase Agreement have occurred (this condition may be waived in writing by the Trustee and the Purchaser with the consent of Sun National Bank);

**(D)**    the transactions contemplated in the Asset Purchase Agreement have been consummated;

**(E)**    the Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Trustee to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan and the Asset Purchase Agreement;

**(F)**    all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained (this condition may be waived in writing by the Trustee and the Purchaser with the consent of Sun National Bank);

**(G)**    Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, shall not exceed the Administrative/Priority Funding Cap (to the extent that any such Claims must be reconciled after the Effective Date, this condition shall be determined by the reasonable agreement of Sun National Bank and the Trustee or if there is a dispute, upon estimation and order of the Bankruptcy Court);

**(H)**    the Trustee shall have received the Sale Proceeds and carved out from them the Plan Fund, including the Unsecured Creditor Fund, or if Sun National Bank successfully credit bids, the Trustee shall have received the Plan Fund, including the Unsecured Creditor Fund; and

**(I)**    no order of a court shall have been entered and shall remain in effect restraining the Debtor, acting by and through the Trustee, from consummating the Plan.

140630.01600/40205933v.7

**9.03  Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan**

In the event that one or more of the conditions specified in Section 9.02 of the Plan have not occurred (or have not been waived as set forth in Section 9.02 of the Plan), upon notification submitted by the Trustee to the Bankruptcy Court: (a) the Confirmation Order, automatically and without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estate shall revest in the Debtor's Estate; (d) the Debtor and all Holders of Claims shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; (e) the Asset Purchase Agreement shall terminate in accordance with its terms; and (f) the Debtor's obligations with respect to the Claims shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or Entity or to prejudice in any manner the rights of the Debtor or the Trustee or any Person or Entity in any further proceedings involving the Debtor.

**ARTICLE  X**
**EFFECTS OF CONFIRMATION**

**10.01  Injunction Regarding Released Claims**

As of the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Person that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to Section 10.04 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against (i) the Debtor, (ii) the Debtor's Estate or the Retained Estate, (iii) the Trustee, (iv) any Releasee, or (v) any Exculpated Person, or any of their respective Property, based on, arising from or relating to, in whole or in part, any act, omission, or other occurrence taking place on or prior to the Effective Date with respect to or in any way relating to the Chapter 11 Case, all of which claims, demands, debts, rights, Causes of Action or liabilities shall be deemed released on and as of the Effective Date; provided, however, that this injunction shall not apply to (a) any claims Creditors may assert under the Plan to enforce their rights thereunder to the extent permitted by the Bankruptcy Code or (b) any claims Creditors or other third parties may have against each other, which claims are not related to the Debtor, it being understood, however, that any defenses, offsets or counterclaims of any kind or nature whatsoever which the Debtor may have or assert in respect of any of the claims of the type described in (a) or (b) of this proviso are fully preserved.

**10.02  Exculpation**

None of the Debtor, the Debtor's Estate, the Retained Estate, the Trustee, the Purchaser or any Exculpated Person shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the

28

Chapter 11 Case, Filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating this Plan, or the Property to be distributed under this Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or these Chapter 11 Case, provided, however, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.

**10.03  Releases by the Trustee**

Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Trustee Releasors will be deemed to have forever released, acquitted, waived and discharged the Releasees to the fullest extent permitted by law or equity from any and all claims, loss, obligations, suits, counterclaims, crossclaims, defenses, judgments, damages, demands, indemnities, duties, debts, rights, cases, controversies, agreements, trespasses, levies, executions, costs, expenses, Causes of Action and liabilities (other than the rights of the Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise of any nature whatsoever, whether in law or equity, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, direct or indirect, then existing or thereafter arising, in law, equity or otherwise, which the Trustee Releasors have, ever had, might have had or might have had in the future, arising out of or in connection with, in whole or in part, any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Releasees, the Debtor, the Chapter 11 Case, or the Plan, including, without limitation, all demands, claims and actions asserted or which could have been asserted in the Debtor's Counterclaims, the Foreclosure Appeal, or the Law Division Action; provided, however, nothing herein shall be deemed to release or discharge any obligations of the Releasees under this plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder.

**10.04  Releases by Holders of Claims**

Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the distributions and other accommodations under the Plan and, if applicable, the Cash, contracts, releases and other agreements or documents to be delivered in connection with the Plan, each Holder of a Claim, and any Affiliate of any such Holder (as well as any trustee or agent on behalf of each such Holder) shall be deemed to have forever waived, released and discharged (i) the Debtor, (ii) the Debtor's Estate and/or the Retained Estate; (iii) the Trustee, and (iv) the Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Trustee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered

29

thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan.

### 10.05   Other Documents and Actions

The Trustee is authorized to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

### 10.06   Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of the Final Decree by the Bankruptcy Court.

### 10.07   Preservation of Insurance

Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair the enforceability of insurance policies that may cover Claims against the Debtor or any other Person or Entity.

### 10.08   Guaranties

Notwithstanding the existence of guaranties, if any, by the Debtor of obligations of any Entity or Entities, and the Debtor's joint obligations with another Entity or Entities with respect to the same obligations, all Claims against the Debtor based upon any such guaranties shall be satisfied and released in the manner provided in this Plan and the Holders of Claims shall be entitled to only one distribution with respect to any given obligation of the Debtor.

### 10.09   Subordination Rights

Any distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other Creditor, and shall not be subject to levy, garnishment, attachment or other legal process by any Holder by reason of claimed contractual subordination rights, which rights shall be waived and the Confirmation Order shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan, in each case other than as provided in the Plan.

### 10.10 <u>No Successor Liability</u>

Except as otherwise expressly provided in the Plan or the Asset Purchase Agreement, the Trustee and the Purchaser do not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other party relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on, or after the Effective Date.  The Trustee and the Purchaser are not, and shall not be, successors to the Debtor by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that the Trustee shall assume the obligations specified in the Plan and the Confirmation Order and the Purchaser shall assume the obligations specified in the Asset Purchase Agreement.

**ARTICLE  XI**
**<u>RETENTION OF JURISDICTION</u>**

### 11.01 <u>Exclusive Jurisdiction of Bankruptcy Court</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

**(A)**    classify or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

**(B)**    grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the entry of the Final Decree by the Bankruptcy Court;

**(C)**    determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

**(D)**    ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

**(E)**    construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Asset Purchase Agreement, and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Trustee in accordance with sections 524 and 1141 of the Bankruptcy Code following consummation;

31

**(F)**    determine and resolve any Case, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

**(G)**    hear any application of the Trustee to modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and Section 12.04 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Asset Purchase Agreement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Asset Purchase Agreement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Asset Purchase Agreement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

**(H)**    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

**(I)**    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

**(J)**    determine any other matters that may arise in connection with or relating to the Plan, the Confirmation Order, the Asset Purchase Agreement, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Asset Purchase Agreement or the Confirmation Order, except as otherwise provided in the Plan;

**(K)**    determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**(L)**    hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

**(M)**    hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan or the Asset Purchase Agreement;

**(N)**    enter a Final Decree closing the Chapter 11 Case;

**(O)**    determine and resolve any and all controversies relating to the rights and obligations of the Trustee in connection with the Chapter 11 Case;

**(P)**    allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue

32

presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim (to the extent permitted under applicable law);

(**Q**)     permit the Trustee, to the extent provided for in the Plan, or the Asset Purchase Agreement, to recover all assets of the Debtor and Property of its Estate, wherever located;

(**R**)     hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtor or the Debtor's Estate arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Case, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(**S**)     hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date that may be commenced by the Trustee thereafter, including Causes of Action, proceedings with respect to the rights of the Trustee to recover Property under sections 542, 543 or 553 of the Bankruptcy Code, or proceedings to otherwise collect to recover on account of any claim or Causes of Action that the Debtor may have had; and

(**T**)     hear any other matter not inconsistent with the Bankruptcy Code.

**11.02  Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, including with respect to the matters set forth above in Section 11.01 hereof, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

**ARTICLE  XII
MISCELLANEOUS PROVISIONS**

**12.01  Binding Effect of Plan**

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Trustee, the Purchaser, any Holder of any Claim treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, Members, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**12.02  Withdrawal of the Plan**

The Trustee reserves the right, at any time prior to Confirmation of the Plan, to withdraw the Plan.  If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor, the Debtor's Estate, or any other Person or to prejudice in any

33

manner the rights of the Debtor, the Debtor's Estate, or any Person in any further proceedings involving the Debtor.

### 12.03 **Final Order**

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Trustee (with the written consent of the Purchaser and Sun National Bank, as relevant and as otherwise ordered or agreed) upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

### 12.04 **Modification of the Plan**

The Trustee reserves the right, upon the consent of Sun National Bank, to alter, amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Confirmation Date. After the Confirmation Date and prior to the substantial consummation of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Trustee may, with the consent of Sun National Bank and so long as the treatment of Holders of Claims under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

### 12.05 **Business Days**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.06 **Severability**

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim, such provision shall be unenforceable as to all Holders of Claims or to the specific Holder of such Claim, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Trustee reserves the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

### 12.07 **Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction,

implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New Jersey, without giving effect to conflicts-of-law principles which would apply the law of a jurisdiction other than the State of New Jersey.

**12.08  Payment of Statutory Fees**

All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtor's Estate.

**12.09  Post-Confirmation Reports**

The Trustee shall file reports as required by the United States Trustee (in respect of such reports to the United States Trustee on a quarterly basis) and the Local Rules until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Chapter 11 Case.

**12.10  Notices**

Any notice required or permitted to be provided under this Plan to the Trustee, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

> Blank Rome LLP
> 1201 Market Street, Suite 800
> Wilmington, DE 19801
> Attn: Bonnie Glantz Fatell, Esq.
> Chapter 11 Trustee of Woodcrest Country Club
> Email: fatell@blankrome.com

> With a copy to:

> Blank Rome LLP
> One Logan Square
> 130 North 18th Street
> Philadelphia, PA 19103-6998
> Attn.: Michael B. Schaedle, Esq.
> Email: schaedle@blankrome.com

**12.11  Filing of Additional Documents**

On or before substantial consummation of the Plan, the Trustee shall issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

35

**12.12  Section 1125 of the Bankruptcy Code**

The Trustee has, and upon Confirmation of the Plan shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

**12.13  Section 1146 Exemption**

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer under the Plan or the Asset Purchase Agreement, or the transfer or sale of any real or other Property of or to the Debtor, the Estate, the Retained Estate, or the Trustee, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

**12.14  Time**

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

**12.15  No Attorneys' Fees**

No attorneys' fees will be paid by the Trustee with respect to any Claim except as expressly specified herein or by order of the Bankruptcy Court.

**12.16  No Injunctive Relief**

No Claim shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

**12.17  Continued Confidentiality Obligations**

Pursuant to the terms thereof, any Holder of a Claim, the Purchaser, and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with this Chapter 11 Case or the Debtor, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

140630.01600/40205933v.7

**12.18 <u>No Admissions or Waivers</u>**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Trustee with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim.

**12.19 <u>Entire Agreement</u>**

The Plan (and all Exhibits to the Plan) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Trustee shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**12.20 <u>Bar Date for Professionals</u>**

Applications for Professional Fee Claims for compensation for services rendered and reimbursement of expenses incurred by Professionals employed by the Trustee from the Appointment Date through the Effective Date shall be Filed no later than forty-five (45) days after the Confirmation Order becomes a Final Order or such later date as the Bankruptcy Court approves. Such applications shall be served on: (a) the Trustee, with a copy to her counsel at the addresses set forth in Section 12.10 hereof; (b) the Office of the United States Trustee; and (c) Diane E. Vuocolo, Greenberg Traurig, LLP, 2700 Two Commerce Square, 2001 Market Street, Philadelphia, PA 19103, counsel for the Prepetition Secured Lender. In accordance with Local Rule 2016-1(i), applications for Professional Fee Claims that are not timely Filed will not be considered by the Bankruptcy Court. Notwithstanding anything to the contrary in this Section 12.20 of the Plan, the application for final approval of the Trustee's Commission may be filed at any point up to and including the time that the Trustee files her final report of administration of the Estate.

**12.21 <u>Conflicts</u>**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the term of this Plan, the terms and provisions of the Confirmation Order shall govern and control.

**ARTICLE XIII**
**<u>CONFIRMATION REQUEST</u>**

The Trustee hereby requests confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

*[Signature page follows]*

37

Dated:  April 18, 2013

**BONNIE GLANTZ FATELL AS CHAPTER 11
TRUSTEE FOR THE BANKRUPTCY ESTATE
OF WOODCREST COUNTRY CLUB**

By: _____
Bonnie Glantz Fatell, Esquire

[SIGNATURE PAGE TO CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY
BONNIE GLANTZ FATELL, AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY
ESTATE OF WOODCREST COUNTRY CLUB]