# **<u>Exhibit A</u>**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-2(c)**<br><br>Michael B. Schaedle (MS 7988)<br>Josef W. Mintz (JM 9145)<br>Victoria A. Guilfoyle (VG 6322)<br>BLANK ROME LLP<br>One Logan Square<br>Philadelphia, PA 19103<br>Phone: (215) 569-5762<br>Fax:  (215) 832-5762<br>Schaedle@blankrome.com<br>Mintz@blankrome.com<br>Guilfoyle@blankrome.com<br><br>*Counsel to Bonnie Glantz Fatell, Chapter 11 Trustee* | |
| In re:<br><br>  WOODCREST COUNTRY CLUB,<br><br>                              Debtor. | Case No. 12-22055 (JHW)<br><br>Judge Judith H. Wizmur<br><br>Chapter 11 |

### ~~FIRST~~ SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY BONNIE GLANTZ FATELL, AS CHAPTER 11 TRUSTEE FOR THE BANKRUPTCY ESTATE OF WOODCREST COUNTRY CLUB

Bonnie Glantz Fatell, chapter 11 Trustee for Woodcrest Country Club, respectfully submits this ~~First~~ Second Amended Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Woodcrest Country Club in the form annexed hereto and made a part hereof.

## TABLE OF CONTENTS

**ARTICLE I** INTRODUCTION, DEFINITIONS,
INTERPRETATION AND EXHIBITS ............................................................................................. 1
    1.01    Introduction ................................................................................................ 1
    1.02    Definitions ................................................................................................. 1
    1.03    Rules of Interpretation ............................................................................. 12
    1.04    Exhibits .................................................................................................... 13
**ARTICLE II** CLASSIFICATION OF CLAIMS ................................................................ 13
    2.01    General Overview ................................................................................... 13
    2.02    Unclassified Claims ................................................................................. 13
    2.03    Unimpaired Claims .................................................................................. 13
    2.04    Impaired Classes Entitled to Vote ........................................................... 13
    2.05    Impaired Classes Deemed to Reject ....................................................... 14
**ARTICLE III** PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS ................ 14
    3.01    Satisfaction of Claims .............................................................................. 14
    3.02    Unclassified Claims, Classified Unimpaired and Impaired Claims ........ 14
    3.03    Administrative Claims ............................................................................. 14
    3.04    Bar Date for Administrative Claims ....................................................... 15
    3.05    Priority Tax Claims ................................................................................. 15
    3.06    Class 1: Prepetition Secured Lender Claims .......................................... 15
    3.07    Class 2: Priority Claims .......................................................................... 16
    3.08    Class 3: General Unsecured Claims ....................................................... 16
    3.09    Class 4: Preferred Bond Holders Claims ............................................... 16
    3.10    Class 5: Preferred Indenture Holders Claims ........................................ 17
**ARTICLE IV** ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN ........... 17
    4.01    Acceptance by Impaired Classes of Claims ............................................ 17
    4.02    Voting Classes ......................................................................................... 17
    4.03    Ballot Instructions ................................................................................... 17
    4.04    Cramdown ............................................................................................... 17
**ARTICLE V** PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ....... 18
    5.01    Timing of Distributions ........................................................................... 18
    5.02    Distributions to Holders of Allowed Claims ........................................... 18
    5.03    No Payment or Distribution Pending Allowance ................................... 18
    5.04    Resolution of Disputed Claims ............................................................... 19
    5.05    Delivery of Distributions ........................................................................ 19
    5.06    Method of Cash Distributions ................................................................. 19
    5.07    Failure to Negotiate Checks .................................................................... 19
    5.08    Unclaimed Property ................................................................................ 20
    5.09    Limitation on Distribution Rights ........................................................... 20
    5.10    Fractional Dollars .................................................................................... 20
    5.11    Compliance with Tax Requirements ....................................................... 20
    5.12    De Minimis Distributions ........................................................................ 21
**ARTICLE VI** EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS ............................................... 21
    6.01    Treatment of Executory Contracts and Unexpired Leases ..................... 21

6.02   Cure of Defaults for Assumed Contracts and Leases ...........................................21
6.03   Bar Date for Claims for Rejection Damages .......................................................22
6.04   Treatment of Rejection Claims ............................................................................22
6.05   Benefit Programs .................................................................................................22
**ARTICLE VII** MEANS FOR IMPLEMENTATION OF THE OF THE PLAN.......................22
7.01   The Sale ...............................................................................................................22
7.02   Compromise and Settlement ...............................................................................23
7.03   Retained Estate....................................................................................................23
7.04   Powers and Duties of the Trustee .......................................................................23
7.05   Purchaser Implementation Obligations...............................................................24
7.06   Application of Sale Proceeds..............................................................................24
7.07   Corporate Action.................................................................................................24
7.08   Compliance with Applicable State Law .............................................................25
7.09   Continued Existence ...........................................................................................25
7.10   Closing of the Debtor's Chapter 11 Case ...........................................................25
**ARTICLE VIII** TERMINATION AND PRESERVATION OF
CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST ......................................25
8.01   Dismissal of Foreclosure Action, Foreclosure Appeal
and Law Division Action ................................................................................................25
8.02   Preservation of Rights.........................................................................................26
8.03   Causes of Action .................................................................................................26
8.04   Setoffs .................................................................................................................26
**ARTICLE IX** CONDITIONS TO CONSUMMATION OF THE PLAN.................................26
9.01   Confirmation Order.............................................................................................26
9.02   Conditions to Effective Date...............................................................................27
9.03   Effect of Failure or Absence of Waiver of Conditions
Precedent to the Effective Date of the Plan ...................................................................28
**ARTICLE X** EFFECTS OF CONFIRMATION .....................................................................28
10.01   Injunction Regarding Released Claims..............................................................28
10.02   Exculpation .........................................................................................................28
10.03   Releases by the Trustee.......................................................................................29
10.04   Releases by Holders of Claims ..........................................................................29
10.05   Other Documents and Actions ...........................................................................30
10.06   Term of Injunctions or Stays...............................................................................30
10.07   Preservation of Insurance...................................................................................30
10.08   Guaranties ..........................................................................................................30
10.09   Subordination Rights .........................................................................................30
10.10   No Successor Liability .......................................................................................31
**ARTICLE XI** RETENTION OF JURISDICTION ..................................................................31
11.01   Exclusive Jurisdiction of Bankruptcy Court.......................................................31
11.02   Failure of Bankruptcy Court to Exercise Jurisdiction.........................................33
**ARTICLE XII** MISCELLANEOUS PROVISIONS ...............................................................33
12.01   Binding Effect of Plan ........................................................................................33
12.02   Withdrawal of the Plan .......................................................................................33
12.03   Final Order..........................................................................................................34
12.04   Modification of the Plan .....................................................................................34

| | | |
|---|---|---|
| 12.05 | Business Days | 34 |
| 12.06 | Severability | 34 |
| 12.07 | Governing Law | 34 |
| 12.08 | Payment of Statutory Fees | 35 |
| 12.09 | Post-Confirmation Reports | 35 |
| 12.10 | Notices | 35 |
| 12.11 | Filing of Additional Documents | 35 |
| 12.12 | Section 1125 of the Bankruptcy Code | 36 |
| 12.13 | Section 1146 Exemption | 36 |
| 12.14 | Time | 36 |
| 12.15 | No Attorneys' Fees | 36 |
| 12.16 | No Injunctive Relief | 36 |
| 12.17 | Continued Confidentiality Obligations | 36 |
| 12.18 | No Admissions or Waivers | 37 |
| 12.19 | Entire Agreement | 37 |
| 12.20 | Bar Date for Professionals | 37 |
| 12.21 | Conflicts | 37 |

**ARTICLE XIII** CONFIRMATION REQUEST ...................................................................................37

140630.01600/22222824v.3~~16371~~

# ARTICLE I
# INTRODUCTION, DEFINITIONS, INTERPRETATION AND EXHIBITS

### 1.01 Introduction

Woodcrest Country Club (the "Debtor") is the debtor in this chapter 11 bankruptcy case. On May 9, 2012, the Debtor commenced this Chapter 11 Case[1] by filing a voluntary chapter 11 petition under the Bankruptcy Code. On February 7, 2013 (the "Appointment Date"), the Office of the United States Trustee appointed Bonnie Glantz Fatell, Esquire, as chapter 11 trustee of the Debtor's Estate (the "Trustee").

This document is the ~~first~~ second amended chapter 11 plan (the "Plan") proposed by the Trustee. Sent to you in the same envelope as this document is the Disclosure Statement, which has been approved by the Bankruptcy Court, and which is provided to help you understand the Plan.

Pursuant to the Plan, the Trustee will sell substantially all of the Debtor's assets and will distribute the cash on hand as of the Effective Date. The conditions to the Effective Date are set forth below in Article IX. The proposed Effective Date of the Plan is not later than **June 15, 2013**.

ALL CREDITORS OF THE DEBTOR ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE TRUSTEE RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

### 1.02 Definitions

For the purposes of the Plan, the following terms (which appear in the Plan in capitalized terms) shall have the meanings set forth below.

**"Administrative Claim"** means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals and the Trustee Commission) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtor's Estate or operating the business of the Debtor, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by or on behalf of the Debtor in the ordinary course of its business, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the

---

[1] Capitalized terms used herein shall have the meanings set forth in Section 1.02 hereof.

Bankruptcy Court under section 546 of the Bankruptcy Code; (b) any fees or charges assessed against the Debtor's Estate under section 1930 of title 28 of the United States Code; (c) any Allowed administrative claim or superpriority claim granted to the Prepetition Secured Lender pursuant to the Cash Collateral Order; and (d) Claims of the Post-Petition Lender in connection with the Post-Petition Loan.

**"Administrative Claims Bar Date"** means, depending on the context, (i) April 30, 2013, the date set by the Bankruptcy Court by which an Administrative Claim arising prior to the Appointment Date must have been Filed, and (ii) the date set forth in the Confirmation Order by which an Administrative Claim arising after the Appointment Date must be Filed.

**"Administrative/Priority Funding Cap"** means an amount not to exceed $1,632,627. The Administrative/Priority Funding Cap is calculated, without limitation: (i) based on the agreement of Blank Rome, LLP, counsel to the Trustee, to cap its fees and expenses at an amount equal to $500,000; (ii) the assumption that the fees and expenses of Executive Sounding Board Associates, Inc., the Trustee's financial advisor will not exceed $~~85,000~~130,000; and (iii) the assumption that the Sale Proceeds will equal $6,250,000, the gross amount of the Stalking Horse Bidder's bid. Notwithstanding the foregoing, if the Sale Proceeds exceed $6,250,000, the Administrative/Priority Funding Cap will increase by an amount equal to the resulting increase in the fee, if Allowed, of SSG Capital Advisors, LLC, the Trustee's investment banker, calculated pursuant to the terms of its retention agreement with the Trustee.

**"Allowed"** means, with reference to any Claim, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may have been amended by the Debtor or Trustee from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date, provided that at the time of the Effective Date the Trustee has not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline; <u>provided</u>, <u>however</u>, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

**"Allowed Claim"** means a Claim that is Allowed.

**"Appointment Date"** shall have the meaning set forth in Section 1.01 of the Plan.

**"Asset Purchase Agreement"** means that certain Asset Purchase Agreement dated as of March 22, 2013 by and among the Trustee, acting for the Debtor and the Debtor's Estate, as seller, and the Stalking Horse Bidder, as buyer, which provides for the sale of certain or substantially all of the Debtor's assets, or such other asset purchase agreement submitted at or prior to the Auction and subsequently determined by the Trustee pursuant to the Sale and Bid Procedures to be the Superior Bid (as defined in the Sale and Bid Procedures).

2

**"Auction"** means the auction for the sale of the Debtor's assets to be held in accordance with the Sale and Bid Procedures.

**"Avoidance Actions"** means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under chapter 5 of the Bankruptcy Code, including, without limitation, sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

**"Ballot"** means the forms of ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Case.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of New Jersey with jurisdiction over this Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. § 158, the unit of such District Court constituted pursuant to 28 U.S.C. § 151.

**"Bankruptcy Rules"** means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceeding therein, as the case may be.

**"Bar Date"** means September 12, 2012, which is the applicable bar date by which a proof of Claim in respect of Priority Claims, Priority Tax Claims, General Unsecured Claims, and subordinated claims of Members or Insiders must have been, Filed, as established by that notice of the Bankruptcy Court dated May 10, 2012 [Dkt. No. 16] (except in respect of General Unsecured Claims for rejection damages, which are otherwise governed by orders, notices and rules in connection with the filing of such proofs of claim).

**"Breakup Fee and Expense Reimbursement"** refer to possible amounts owed the Stalking Horse Bidder under the Asset Purchase Agreement and the Sale and Bid Procedures and shall be defined by reference to the Asset Purchase Agreement and the Sale and Bid Procedures.

**"Business Day"** means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of New Jersey are authorized or obligated by law, executive order or governmental decree to be closed.

"**Bylaws**" means the Woodcrest Country Club Constitution and By-Laws dated as of November 1, 2010.

"**Cash**" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"**Cash Collateral Order**" means each interim or Final Order, as in effect from time-to-time, entered by the Bankruptcy Court authorizing and approving the Debtor's use of cash collateral pursuant to section 363 of the Bankruptcy Code, and any extensions or amendments thereof.

"**Causes of Action**" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, rights of turnover or replevin, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor or the Debtor's Estate, including, but not limited to, the Avoidance Actions and Debtor's Counterclaims.

"**Chapter 11 Case**" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date.

"**Claim**" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the latest of: (a) 60 days after the entry of the Confirmation Order; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) above.

"**Class**" means each class, subclass or category of Claims as classified in Article II of the Plan.

"**Closing**" shall have the meaning set forth in sections 1.1(s-t) and section 11.1 of the Asset Purchase Agreement.

"**Confirmation**" or "**Confirmed**" means the entry by the Bankruptcy Court of the Confirmation Order.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code scheduled to begin on **May 24, 2013 at 1:00 p.m. (E.T.)**.

4

"**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Creditor**" means any Person that is the Holder of any Claim against the Debtor.

"**Debtor**" shall have the meaning set forth in Section 1.01 of this Plan.

"**Debtor's Counterclaims**" means the counterclaims that the Debtor has asserted against Sun National Bank in the Law Division Action and the Foreclosure Action.

"**Disallowed**" means, with respect to any Claim or portion thereof, any Claim against in the Debtor which: (a) has been withdrawn, in whole or in part, by agreement of the Debtor or the Trustee, as applicable, and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction.  In each case, a Disallowed Claim is disallowed only to the extent of disallowance or withdrawal.

"**Disallowed Claim**" means a Claim, or any portion thereof, that is Disallowed.

"**Disclosure Statement**" means the Disclosure Statement with Respect to the Trustee's First Amended Chapter 11 Plan of Reorganization for the Estate of Woodcrest Country Club, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Trustee, as the same may be altered, amended, supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

"**Disputed**" means any Claim that has been neither Allowed nor Disallowed.

"**Disputed Claim**" means a Claim, or any portion thereof, that is Disputed.  For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"**Effective Date**" means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

"**Entity**" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"**Estate**" means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

"**Exculpated Persons**" means: (a) the Prepetition Secured Lender; (b) the Trustee; (c) the Purchaser; (d) the Post-Petition Lender; and (e) to the extent that such parties are

5

~~Exculpated Persons,~~ the Trustee and each and every predecessor, successor, assign, subsidiary, executor, administrator, and ~~their respective~~ current and former ~~officers~~employee, ~~directors~~agent, ~~employees, board members, agents, bondholders, representatives~~representative, ~~stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in clauses (a) through (d) of this definition~~manager, affiliate, partner, attorney, advisor and professional of the Trustee.

**"File, Filed or Filing"** means file, filed or filing with the Bankruptcy Court in the Chapter 11 Case.

**"Final Decree"** means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Rule 3022-1.

**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court (x) as to which the time to appeal, petition for *certiorari*, or move for reargument, reconsideration, rehearing or new trial has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument, reconsideration, rehearing or new trial shall then be pending; (y) as to which any right to appeal, petition for *certiorari*, reargue, reconsider, rehear or retry shall have been waived in writing; or (z) in the event that an appeal, writ of *certiorari*, reargument, reconsideration, rehearing or new trial has been sought, as to which (i) such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order is appealed, (ii) *certiorari* has been denied as to such order, or (iii) reargument, reconsideration or rehearing or new trial from such order shall have been denied or resulted in no modification or such order, and the time to take any further appeal, petition for *certiorari*, or move for reargument, reconsideration, rehearing, or new trial shall have expired without such actions have been taken; <u>provided</u>, <u>however</u>, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

**"Foreclosure Appeal"** means the appeal of the Foreclosure Action commenced by the Debtor in the Superior Court of New Jersey Appellate Division captioned as <u>Sun National Bank v Woodcrest Country Club</u>, docket number A-002805-11.

**"Foreclosure Action"** means the foreclosure action commenced by Sun National Bank on October 13, 2010 in the Superior Court of New Jersey, Chancery Division, Camden County captioned as <u>Sun National Bank v Woodcrest Country Club</u>, Docket No. F-045718-10.

**"General Unsecured Claims"** means all Claims, including, but not limited to Rejection Claims, that are not Administrative Claims, Priority Tax Claims, Professional Fee Claims, Prepetition Secured Lender Claims, Preferred Bond Holder Claims, or Proprietary Indenture Holder Claims.

6

"**Holder**" means an Entity holding a beneficial interest in a Claim and, when used in conjunction with a Class or type of Claim, means a holder of a beneficial interest in a Claim in such Class or of such type.

"**Impaired**" means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Claim**" means a Claim which is Impaired.

"**Insider**" shall have the meaning set forth in section 101(31) of the Bankruptcy Code and shall also encompass any Person with a sufficiently close relationship with the Debtor that his or her conduct is made subject to closer scrutiny than a Person dealing at arm's length with the Debtor.

"**Law Division Action**" means the civil action commenced by Sun National Bank on September 24, 2010 in the Superior Court of New Jersey, Law Division, Cumberland County captioned as Sun National Bank v Woodcrest Country Club, Docket No. CUM-L-000964-10.

"**Lender Releasees**" means (a) the Prepetition Secured Lender; (b) the Post-Petition Lender, and (c) the Lender Releasees' predecessors, successors, assigns, subsidiaries, executors, and the Lender Releasees' respective current and former officers, directors, employees, board members, agents, bondholders, representatives, stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in subclauses (a) and (b) above, provided however, that the foregoing released parties identified in subclauses (a) and (b) above shall be released only from liabilities arising out of actions taken in such capacity.

"**Liens**" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"**Local Rules**" means the Local Rules of the Bankruptcy Court District of New Jersey.

"**Member**" shall mean a member of the Debtor.

"**Objection**" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) other than a Claim that is Allowed.

7

**"Person"** means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except that a governmental unit that acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person.

**"Petition Date"** means May 9, 2012, the date on which the Debtor filed its petition for relief commencing this Chapter 11 Case.

**"Plan"** means the ~~First~~ Second Amended Chapter 11 Plan of Reorganization for the Estate of Woodcrest Country Club dated as of ~~April~~May 2~~5~~3, 2013, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Trustee, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order and the terms and conditions of the Plan.

**"Plan Fund"** means the amount of Cash to be carved out from the Sale Proceeds necessary to: (i) fund the Unsecured Creditor Fund, (ii) pay Allowed Administrative Claims (which includes, without limitation, the Allowed Trustee Commission and the U.S. Trustee's Fee Claims), Professional Fee Claims, Priority Tax Claims, and Priority Claims not to exceed the Administrative/Priority Funding Cap, (iii) pay off the outstanding balance of the Post-Petition Loan as of the Effective Date, and (iv) in the event that the Purchaser is not the Stalking Horse Bidder, Cash necessary to pay the Breakup Fee and Expense Reimbursement. Notwithstanding the foregoing, in the event that the Purchaser is Sun National Bank or its designee by credit bid, the Plan Fund shall be funded by Sun National Bank.

**"Post-Petition Loan"** means the post-petition loan provided to the Trustee by the Post-Petition Lender pursuant to the Post-Petition Financing Order and related documents.

**"Post-Petition Financing Order"** means the interim or Final Order, as in effect from time-to-time, entered by the Bankruptcy Court authorizing the Trustee to receive the Post-Petition Loan pursuant to section 364 of the Bankruptcy Code, and any extensions or amendments thereof.

"**Post-Petition Lender**" means Sun National Bank, in its capacity as post-petition lender to the Trustee, on behalf of the Debtor's Estate.

**"Preferred Bond Holders"** means the holders of Preferred Bonds.

**"Preferred Bonds"** means the Preferred Bonds that were issued by the Debtor prior to the Petition Date.

8

**"Preferred Bond Holder Claims"** means the claims of the Preferred Bond Holders arising under the Preferred Bonds.

**"Prepetition Secured Financing Agreements"** means (i) that certain Building Loan Agreement, dated on or about September 5, 2002, together with all guaranties, security agreements, subordination agreements, intercreditor agreements, blocked account or deposit control agreements, indentures, notes, mortgages, pledges, instruments and any other documents or agreements executed in connection therewith and/or in furtherance thereof, as same may have been amended, restated, supplemented or otherwise modified from time to time, and (ii) that certain Secured Revolving Credit Loan Agreement, dated on or about August 23, 2007, together with all security agreements, blocked account or deposit control agreements, notes, mortgages, pledges, instruments and any other documents or agreements executed in connection therewith and/or in furtherance thereof, as same may have been amended, restated, supplemented or otherwise modified from time to time, pursuant to which the Prepetition Secured Lender agreed to provide loans and other financial accommodations to the Debtor.

**"Prepetition Secured Lender"** means Sun National Bank in its capacity as lender pursuant to the Prepetition Secured Financing Agreements.

**"Prepetition Secured Lender Claim"** means the claim of the Prepetition Secured Lender arising under the Prepetition Secured Financing Agreements in an amount of $11,635,872.14 as of the Petition Date plus accrued interest thereafter, but only to the extent that such Claim is a fully secured claim as determined by section 506(a)(1) of the Bankruptcy Code.

**"Priority Claim"** means any Claim accorded priority in payment pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

**"Priority Tax Claim"** means any Claim accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**"Pro Rata Share"** means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until disallowed).

**"Professional Fee Claims"** means Administrative Claims for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with applications by Professionals in the Chapter 11 Case and approved by Order of the Bankruptcy Court.

**"Professionals"** means any professional employed in this Chapter 11 Case pursuant to sections 327, and 1106 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4) of the Bankruptcy Code.

9

"**Property**" means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including, without limitation, Cash, contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

"**Purchaser**" means the Stalking Horse Bidder under the Asset Purchase Agreement or a Superior Bidder (as that term is defined in the Sale and Bid Procedures and the Asset Purchase Agreement), including, without limitation, Sun National Bank, subject to its obligations to provide the Plan Fund pursuant to this Plan and the Plan Funding Agreement.

"**Proprietary Indenture Holder**" means the holder of a Proprietary Indenture.

"**Proprietary Indenture**" means any Proprietary Indenture Bond issued by the Debtor prior to the Petition Date.

"**Proprietary Indenture Holder Claims**" means any claim of a Proprietary Indenture Holder arising under a Proprietary Indenture.

"**Rejection Claims**" means claims of any non-Debtor counterparty to any unexpired lease of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of this Chapter 11 Case under section 365 of the Bankruptcy Code or pursuant to the Plan or the Asset Purchase Agreement.

"**Releasees**" means: (a) the Prepetition Secured Lender, (b) the Trustee, (c) the Purchaser, (d) the Post-Petition Lender; (e) the Releasees' predecessors, successors, assigns, subsidiaries, executors, and the Releaseee' respective current and former officers, directors, employees, board members, agents, bondholders, representatives, stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in subclauses (a) through (d) above, provided, however, that the foregoing released parties identified in subclauses (a) through (d) above shall be released only from liabilities arising out of actions taken in such capacity.

"**Retained Estate**" means all of the Property of the Debtor, including without limitation, all remaining Property of the Debtor's Estate after Closing (including, without limitation, any Debtor interest in escrows, deposits and insurances), the Plan Fund, the Causes of Action (subject to the release provisions of this Plan, including, without limitation, as to the Debtor's Counterclaims) and the Cash and non-Cash proceeds thereof, which shall not revest in the Debtor upon Confirmation, but shall be retained in the Debtor's Estate, which Retained Estate shall continue until the Retained Estate's Property has been entirely distributed or otherwise disposed of under the Plan and the Confirmation Order by the Trustee.

"**Sale**" means the sale of substantially all of the Debtor's assets under or in connection with the Plan and the Asset Purchase Agreement.

"**Sale and Bid Procedures**" means the sale, bid and auction procedures set forth in the Sale Procedures Motion and approved by the Bankruptcy Court pursuant to the certain *Order: (A) Approving Procedures for the Sale of Substantially All of the Debtor's Assets; (B) Scheduling*

*an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief* entered April 2, 2013 [Dkt. No. 294].

**"Sale Documents"** means the Asset Purchase Agreement, the Schedule of Assumed Contracts, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in each case as amended from time to time in accordance with their terms.

**"Sale Procedures Motion"** means the *Motion of Bonnie Glantz Fatell, Chapter 11 Trustee, for an Order: (A) Approving Procedures for the Sale of Substantially All of the Debtor's Assets; (B) Scheduling an Auction; (C) Approving Assumption and Assignment Procedures; (D) Approving Form of Notice; and (E) Granting Related Relief* Filed on March 22, 2013 in the Bankruptcy Court seeking approval of, among other things, sale and auction procedures in connection with the Sale.

**"Sale Proceeds"** means the Sale proceeds to be paid by the Purchaser to the Trustee for the benefit of the Debtor's Estate pursuant to the Asset Purchase Agreement including post-Closing adjustments.

**"Schedule of Assumed Contracts"** means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtor and assigned to the Purchaser under or in connection with the Asset Purchase Agreement, which schedule shall be set forth in or as an attachment or exhibit to the Asset Purchase Agreement.

**"Schedules"** means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor in the Chapter 11 Case, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

**"Secured Claim"** means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor's Estate has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

**"Stalking Horse Bidder"** means Cherry Hill Land Associates Limited Liability Company, a New Jersey limited liability company.

**"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

**"Trustee"** shall have the meaning set forth in Section 1.01 of the Plan.

11

**"Trustee Commission"** shall be the commission due the Trustee as allowed by law and authorized by the Bankruptcy Court in the maximum amount of $125,000 as agreed by the Prepetition Secured Lender and the Trustee.

**"Trustee Releasors"** shall mean the Trustee, as a representative of and on behalf of the Debtor, the Debtor's Estate and the Retained Estate, and its predecessors, successors, assigns, subsidiaries, affiliates, past and present officers, directors, agents, executors, administrators, members, bondholders, employees, representatives, advisors and/or attorneys claiming by, through or under any of them.

**"Unclaimed Property"** means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, or, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.07 of the Plan.

**"Unimpaired"** means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

**"United States Trustee"** means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the District of New Jersey.

**"Unsecured Creditor Fund"** means Cash in the amount of $100,000 to be funded as part of the Plan Fund and distributed Pro Rata to Holders of Allowed Unsecured Claims in accordance with Article V of the Plan.

**"U.S. Trustee's Fee Claims"** means any fees assessed against the Debtor's Estate or the Retained Estate pursuant to section 1930(a)(6) of title 28 of the United States Code.

**"Voting Agent"** means the Trustee or such other Entity that is designated by the Trustee.

**"Voting Deadline"** means **May 17, 2013** at 5:00 p.m. Eastern Standard Time, the last date by which Creditors may vote to accept or reject the Plan, unless such deadline is extended by the Trustee or the Bankruptcy Court.

### 1.03    Rules of Interpretation

All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code). Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for

purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.14 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

### 1.04 Exhibits

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

## ARTICLE II
## CLASSIFICATION OF CLAIMS

### 2.01 General Overview

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class and is classified in a different Class to the extent the Claim qualifies within the description of that different Class. A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

### 2.02 Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims and Claims of the Post-Petition Lender in connection with the Post-Petition Loan) and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan. The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

### 2.03 Unimpaired Claims

Class 2, which may contain Priority Claims, is unimpaired under the Plan.

### 2.04 Impaired Classes Entitled to Vote

The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

13

Class 1 shall consist of the Prepetition Secured Lender Claims.

Class 3 shall consist of the General Unsecured Claims.

**2.05** **Impaired Classes Deemed to Reject**

The Plan classifies the following Impaired Classes of Claims as an Impaired Class that is not entitled to vote to accept or reject the Plan.  Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of a Claim in these Classes is conclusively presumed to have rejected the Plan in respect of such Claims because the Plan does not entitle the Holders of such Claims to receive or retain any Property under the Plan on account of such Claims. Accordingly, Holders of such Claims are not entitled to vote to accept or reject the Plan:

Class 4 shall consist of the Preferred Bond Holders Claims.

Class 5 shall consist of the Proprietary Indenture Holders Claims.

## ARTICLE III
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS

**3.01** **Satisfaction of Claims**

The treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against the Debtor and the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.

**3.02** **Unclassified Claims, Classified Unimpaired and Impaired Claims**

Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.  Class 2 Claims are not impaired and the Holders thereof are not entitled to vote to accept or reject the Plan on account of such Allowed Claims.  Class 1 Claims and Class 3 Claims are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims.  Class 4 Claims and Class 5 Claims are Impaired under the Plan and the Holders thereof will neither receive nor retain any Property on account of such Claims and, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Claims are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan on account of such Claims.

**3.03** **Administrative Claims**

Administrative Claims are Unimpaired.  Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim shall receive from the Plan Fund in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid

14

Allowed Claim in Cash on or as soon as reasonably practicable after the later of -- (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to in writing by the Trustee and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Trustee or as the Bankruptcy Court may order.

### 3.04 Bar Date for Administrative Claims

The Administrative Claims Bar Date of April 30, 2013 applies to all Administrative Claims allowable under sections 330, 503(b), including, without limitation, 503(b)(9) for goods sold to the Debtor within twenty days of the petition date, 507(a)(2) or 1114(e) of the Bankruptcy Code that were due and owing on, or prior to, or as of the Appointment Date. The Administrative Claims Bar Date does not apply to (i) US Trustee Fee Claims; (ii) Administrative Claims that have already been fixed and approved by order of the Bankruptcy Court; (iii) Administrative Claims that have been paid in full at any time prior to the Administrative Claims Bar Date; and (iv) Administrative Claims of professionals of the Trustee arising under Bankruptcy Code sections 327, 328, 330, 331, or 503(b)(2). The Confirmation Order will establish an Administrative Claims Bar Date for Filing Administrative Claims, except for Claims of the kind specified in Section 12.20 hereof, arising after the Appointment Date, which date will be thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Holders of Administrative Claims that are subject to the Administrative Claims Bar Date shall submit requests for payment on or before such Administrative Claims Bar Date or forever be barred from submitting any request on account of such Administrative Claim.

### 3.05 Priority Tax Claims

Priority Tax Claims are Unimpaired. Each Holder of an Allowed Priority Tax Claim shall receive from the Plan Fund, at the option of the Trustee, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed and (iii) a date agreed to by the Trustee and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Trustee or as the Bankruptcy Court may order.

### 3.06 Class 1: Prepetition Secured Lender Claims

The Class 1 Prepetition Secured Lender Claim is Impaired. The Prepetition Secured Lender holds valid, perfected enforceable liens on all of the assets of the Debtor's Estate, up to the amount of the Prepetition Secured Lender Claim. If the Prepetition Secured Lender complies with the Sale and Bid Procedures, it shall have the right to credit bid the amount of the Prepetition Secured Lender Claim at the Auction. On the Effective Date, the Prepetition Secured Lender shall be deemed to hold an Allowed Prepetition Secured Lender Claim. On the Effective Date, the Trustee shall distribute to the Holder of the Allowed Prepetition Secured Lender Claim, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, Sale Proceeds in an amount up to the Allowed Prepetition Secured Lender Claim after carving out